The next case for argument is 23-1129 CUPP Computing versus Vidal. We're ready with you when you are, Mr. Mundry. Good morning, Your Honors. May it please the Court. Twenty patent claims were found obvious over a single obviousness reference. In order to do so, the PTAB had to ignore certain important claim elements and claim limitations. We're only appealing four of those claims because those two have two different claim elements that are just not considered by the PTAB and should be reversed on that basis alone. The most obvious one is the dependent claims 8 and 17. Claims 8 and 17 require certain information, security codes, security policy, and security data to be configured to mirror a security policy of a gateway. Now, that's a transitive verb, and that means it's an order of operations. The policies have to be configured to mirror that which is on the gateway already. The PTAB found that it was not an order of operation. They said it could be the other way around, so that's what, in fact, it was. It was actually reversed. There was no evidence or record that those security code, policy, and data are configured to mirror the gateway, but it's, in essence, the other way around. But isn't mirroring measured, or isn't it reasonable for the Board to find mirroring is measured by the end result? Do you have the same security policies, for example, in both locations, regardless of who gets it first or if they get it at the same time? Well, that's what the PTAB found. What's unreasonable about that? Well, it ignores the language of the claim. When it says it's configured to mirror the security policies of a gateway, under common English grammar, that's a transitive verb where one object acts on another object. Here, the policies and code and data are configured to mirror that of a gateway, so the gateway has to be there first. They have to have the policies first, and it has to be mirrored the other way around. It's not enough to have just the gateway mirroring the policies and everything else, so that's one issue with it. The second issue with this claim construction was raised for the very first time in oral argument, and that was admitted by the PTAB. This claim construction did not come up in any of the briefing. None of the experts gave this claim construction. It was brought up in the actual oral argument. That's a violation of the APA and due process. Wasn't it clear all along that you implicitly were arguing for the order of steps, and they were not? They being Trend Micro. Yeah, Trend Micro. When they were here. Yeah, exactly. It wasn't clear what they argued, to be quite frank, because this is two dependent claims, and to be honest with you, it was kind of glossed over. The fact that they brought up for the very first time that it was not an order of operations during oral argument, and that's what the PTAB relied on and actually quoted in their final written statement. And you had no opportunity to respond whatsoever? In oral argument, we could have, but we didn't have the opportunity to actually vet it out and actually have the claim construction prior to the actual oral argument. As this Court found in Dale and Qualcomm, it's not appropriate to have the oral argument serve a basis and get sprung on a new claim construction and have the PTAB adopt it. And PTAB doesn't hide the fact that they adopted it from the oral argument. Well, I think a lot of our cases say they can adopt a different claim construction, and what we look to is whether or not there was sufficient opportunity for the sites to respond to that. And we would say there was not sufficient opportunity because it was raised for the first time, and it was just never briefed. So we think it was, one, misreading of the English language, simple rules of grammar. My high school English teacher taught me about transitive verbs. And two— Well, if it's that simple, couldn't it have you responded at oral argument? Well, it could have been, but it's still an unfair subpoena of a claim construction. Not if you had a chance to respond. To have a claim construction brought for the very first time by a petitioner in oral argument and have an effective response to it and understand where that was coming at that time, I think would be an extreme standard to set because that's the case. Petitioners would spring a new claim construction on every oral argument, and that's just not the rules. The rules are you give proper notice, and that's through the papers. So I think that is a basis for reversal. Did you attempt to ask for a lead to respond to that new claim construction? I think that's what we're doing now. It will disappear because at the time— It perhaps is the wrong form. If you're complaining about the board adopting a wrong claim construction because you didn't get a chance to fully explain your reasoning, you should have asked the board. Well, the board didn't adopt a claim construction until a file-written decision. So it's something that I guess— But you're saying it was new at oral argument, so you knew it was new. You had a chance at oral argument to respond, and if you thought it was that important, you could have asked the board for a lead to file further briefing. They probably would have denied it, but at least you could have gotten something into the board to let them know you thought this was a problem. Yeah, I guess, Your Honor, I appreciate that response, but at the same time that does kind of shift the burden to us when we did nothing wrong. We proposed our claim constructions up front, and we got sprung on at the very end to put that burden— And to be candid with you, we didn't expect the board to adopt that claim construction because it is against the laws of English grammar. If you read that claim language, it cannot be clearer that the security data, code, and policies are configured to mirror the policies of the— And that's nowhere in the record that you made that assertion to the board? Made the assertion— To the board, before the board. What assertion? What you just said, that you think this is the clear reading of the clear construction of the term. We actually did argue that below. You acknowledge that you made clear all along that your position was there is an order of steps, correct? That's correct. And was it not clear going into the hearing that Treadmicro disagreed with that? I don't think so. I don't think it was clear that it was going to be— They walk in and say, I'm going to put a finer point on it. What Patentee wants is an order of steps, and we disagree. Isn't that really what happened? There was a dispute, and they articulated it in a clearer way at the hearing. Well, they still violated laws of grammar, we would submit. That's merits. The merits is one issue, and the actual procedural component here, when it actually came up and when the board actually decided to adopt it was based on the oral argument. I understand your Honor's position that maybe it was a fine point that we should cut at the time, but these hearings are very long, and there's a bunch of arguments going on. There was no concept, would you ever believe, that the board would ignore the plain language of the claim. But you're saying the only way the record could be read is that you all, in good faith, went into the hearing not even recognizing there was a dispute about your order of steps proposed construction of the mirroring term. Well, the order of steps was implicit in the language itself, so we thought that's what the argument was about. I may be wrong about this, but isn't our usual rule that we don't consider the claims to have an order unless otherwise required? Well, there is a rule to that. The plain language requires it. That's our position. The language itself is very explicit. There is an ordered operation here, because the language, you can't get around the plain language itself. So it seems like you were the ones that should have made, and you made that argument to the board. We made that argument. And you found out only at the hearing that they differed with your analysis of whether the claims have to be in order? You didn't know that before? It was not apparent that they would be arguing that until the oral argument, and actually that's what, in the PTAB's written decision, that's what governs this. That's what they said. They said that they adopted what was brought about by the oral argument. I would like to go to Claims 1920 while I have a chance here. In that particular instance, once again, the PTAB just ignored part of the claim language. They did the analysis of Claims 1 and 19 together, saying they're similar, not identical, but they're similar. They used the construction of Claim 1 to invalidate Claim 19. Now, Claim 19 had a very important element added to it that was not construed. That is the configurably processed by a security system processor. That is a very key aspect here. You had to do the processing by the security system processor, not processing down at the mobile device. That's a very key, important component that was never construed. In fact, that — Well, I thought your main argument with respect to Claim 19 was the Board's reliance on this expert, whose declaration you claimed was too conclusory. That's part of it. That's part of it. The first part was the claim construction issue that they ignored that component of the claim construction altogether. The PTAB, if you look at appendix pages 20 to 22, what was very illuminating is the PTAB did the claim — that's the claim construction section of the final written decision, section C. And there they're construing the claims, but they talk about an obviousness analysis. They're doing an obviousness analysis during claim construction, which is per se incorrect. This court's held numerous times it was a two-step process. We do claim construction independent of the prior art, and then do an obviousness analysis. And that is conflated all over that section where they're interpreting these very claims we're complaining of. Have we ever held that if the outcome is the same under either proposed construction, that the Board has to nonetheless expressly construe the term? Because here the Board goes on to say even under your preferred construction, it's still obvious. Have we said they have to expressly construe in that circumstance? That's the Board's head I win, tails you lose argument. And they're doing this on every one of the written opinions I've seen recently. Have we said they can't do that, though? No, I think that's fine, but they didn't do analysis of the claim construction. They did analysis — I mean, isn't that just good opinion writing? It's like we'll address it, here's what we think is right, but even if we're wrong on this, you still lose because of this other reason. You're allowed to make alternative grounds for your holding. Absolutely. But my point is that they didn't apply the construction that we applied. They just summary said even using your construction, it would still be obvious. Not saying why. No analysis of it. All the analysis was done using petitioner's construction. Just a summary conclusory statement saying even if we didn't adopt your construction, it would be obvious. And that was the extent of it. That's about as far as they went. Then that's not enough. What page is that in the Board's opinion? It starts on appendix page 20 to 22. That's where they start doing the two-step process. It goes throughout and they talk about during the claim construction process itself, they talk about obviousness. And that is just conflating and falling on top of this two-step process. If they would have done a claim construction first, that would have been fine. And then turn to obviousness. So my point here is really that by conflating the two and giving a summary conclusion that even under your claim construction, it would still be obvious, that is just not an appropriate way to conduct the claim construction period. And, in fact, they didn't give it any way at all. The section configured to be processed by the security system processor, when, in fact, both parties agreed, that wasn't how the prior art operated. Both parties agreed the prior art did the processing at the mobile device, not at the server, not at the security system processor. All the processing done relative to the claim happens at the mobile device. If they had given proper construction, then we would have been able to overcome when claims 19 and 20. Unless there's any questions, I'll reserve. Thank you. Thank you. Thank you, Your Honor. Mr. Ayers. Good morning, Your Honors. And may it please the Court, Peter Ayers on behalf of Director Vidal. The board in this case addressed and resolved the issues that were presented to it in a manner that they were framed. Let me start first with the mirrored limitation in claims 8 and 9, because I think it's helpful to go back and look at actually how that issue was teed up. The petitioner in this case consistently argued that the policies were transmitted from the security manager 130 in Groendel to the wireless gateway, and that's at APPX 129 in their petition. They did not propose that the claim required construction, because, as this Court just acknowledged, there is no – there's a rule against imposing an order unless the claim language either explicitly or implicitly required it. And as a result, the petitioner didn't suggest or propose that the claim required an order. Now, what we heard today is that the claim language was so clear that it did impose an order of operations, and yet the patent owner did not even propose a construction, which is often how these issues are teed up, is that it's the petitioner who is arguing for a narrow construction, which they didn't. In fact, their patent owner response didn't really even address the order. It wasn't really until the server ply, and that's at APPX 380, where they really sort of engage on this order of operations, because they say the security policies of the gateway in Groendel mirror those on the server 102, not the other way around. So now they're making this implicit argument that, no, in fact, the claims require just the opposite order. But even then, they don't make this claim construction argument. And so, not surprisingly, when this issue comes up at the oral hearing, the petitioner says the claims don't require an order of operations, and that is clearly the case. And we can talk about the merits of that if the Court would like. But what I would say is, and as described in the brief, that is clearly, that claim construction, to the extent it really is one, is clearly supported by the specification in this case. And, in fact, to adopt Cupp's argument would actually exclude this update authority device 750 embodiment that's shown at column 13, lines 2 through 8 at APPX 70. So both, and we think that the language is clear, even without the specification, but certainly that's another reason why the Board's construction was correct in this case. And as a result, that decision should be affirmed. Now, assuming the procedure by which the dispute was argued is, as you say, what was Cupp's opportunity to be heard on the order of steps? Was it not until the hearing? No, Your Honor. They had an opportunity in their patent owner response, because the petition laid out exactly the sequence that the petition was relying on, namely pushing these policies from the server to the wireless gateway. Certainly that was the opportunity for them. If the claims were so clear to require the opposite order, that was an opportunity to raise that issue. And then, again, in their server reply, which they did, again, but making it more of a factual issue, but certainly could have made this claim construction argument at that point as well. And then, as Judge Hsu says, to the extent that there was any, you know, that they felt blindsided at the oral hearing, certainly they could have requested to be heard at that time. So does that answer your question? Yes, it does. Related, though, the Board is not contending that if an unexpected for the first time claim construction dispute arises at the hearing, that the patentee can be expected to on the fly respond to it and then only hear that they lost about it in the final written decision. No, Your Honor. This Court has made clear that parties are to be given notice and an opportunity to be heard on these issues. So what is the mechanism that they should have employed or would have employed here, if that was the situation as they described it? Again, I would say that the correct response would have been in their patent owner response. If the claim language was that clear to them that these claims required an order, then they should have raised it in their patent owner response. Well, I think their answer is that they didn't know that you were taking the opposite position. They assumed that everybody was in agreement that you had requested a claim construction and raised it as a major claim construction issue. I think that's what their argument is. I agree, Your Honor. But I think to the extent, again, I would say that the general rule, and this is in the Court's Baldwin Graphics v. Siebert case 512F1338, the general rule is that claims don't require an order of operations. So with that in mind, they came forward with their theory, and this is at APPX 129, that Groenendahl, quote, security manager 130 may push policies. That's underlined in their petition to the extent that there was any doubt about that. So is your argument that the petition, even though it didn't raise this as a claim construction argument, their arguments contradicted on their face what they now say was the proper claim construction? So they should have known that they needed to say, oh, that doesn't work because it requires this order. Yes. And they could have either raised that as a claim construction argument or just this is the plain language so it doesn't show it. But it's not that they were surprised about their argument because it clearly had a different order than they contemplated. Exactly, Your Honor. And we see this in other cases. Did they respond to that in the patent owner's response, that ordering argument? No. They made kind of a different argument about whether it was configured in one place or another but didn't really engage on that order. It wasn't until the cert reply where they finally latched on to this sort of precise sequence. And then, as I said, that's why, you know, a final point was put on it at the oral hearing. But they had multiple opportunities to address this claim construction issue and just passed on it. If I could, I'd just like to turn briefly to the second issue, and that is this configured to be processed. Again, the court or the board addressed the issues that were presented to it. And it did a thorough job and did not conflate the claim construction and the obviousness analysis. It dedicates seven or eight pages to the claim construction. I mean, both places within this. Yeah, but I think the problem, I mean, it does on that claim construction, but then it has this alternative holding that even under the other claim construction it would be okay. And there they do refer to another section, 3D5, right? So they don't have a lot of analysis right there. They cite to another portion of the opinion. That's true, Your Honor. And, again, this is the way these issues were framed up by the parties, part because there was an issue that's not present here because it was resolved in the prior appeal with the 164 patent that Judge Stark was on. But in that case, the issue was whether or not merely just providing the security information to the mobile device was providing a security service. And so a lot of the arguments ended up, even in this case, sort of being surrounded by that. But, again, I would like to go back. I think the best place to start when analyzing what the board did in this case is to look at CUP's actual proposed construction in this case. And that's at APPX 286. And if you compare that construction, again, this was their argument about what the claim term meant, the entire term. They said it should be construed according to its plain or random meaning, which is, quote, configured to be processed, just literally repeated back the exact same language of the claim by the security system processor, such that the security system implements security services for a coupled mobile device. So other than sort of rearranging the terms, didn't really impose anything material on the claim, except perhaps with respect to implements. And that was exactly one of the terms that the Court explicitly construed, and they do not challenge that now on appeal. So they were given the process they were due with respect to the claim construction. There hasn't been any arguments this morning on the substantial evidence to support that. But, again, I think that the board's decision is clearly supported by substantial evidence, both with Groendahl's teaching and Dr. Jacobson's expert testimony on that. And I'm happy to answer any questions on the substantiality of that evidence or yield back my time. No further questions. Thank you, Your Honors. Let me just touch on the issue my friend just brought up about that processing element on Claims 19 and 20. It's not that we had a problem with the construction the board used for implementing security services for a mobile device. That was from Claim 1. The problem was they completely ignored the configure to be processed by the security system processor, which was added to Claims 19 and 20. It wasn't in Claim 1. They used the same analysis for Claim 1, but a different 19 and 20. And they claimed claim construction for 1 as they did 19 and 20. They did not add any weight to the added language. That is the key issue here. If you look at the actual language of 19 and 20, they are different claims. We're not appealing to Claim 1 because we didn't have a problem with the claim structure. We do have a problem. They ignore the entire first part of that claim element where it's configured to be processed by the security system processor. Second, with respect to the Tamir language, that was brought up in our certified. Counselor correctly pointed out, and that was pointed out in the final written decision as well. When we recognized where they were arguing that position on the petition, they did not have a claim structure on that issue. They kind of glossed over Claims 8 and 17. And when they came back in their reply brief, we noticed what they were doing. So we brought the argument up at that point. So we addressed it in our papers before the oral argument. And the first time it came up from the trend was during oral argument, and that's what the board relied upon. So I just want to make sure those points are very clear. Why isn't that a sufficient opportunity to be heard, both in your patent owner response and, as you say, in your CER reply, and then at the hearing? Well, it didn't become apparent as to what the position they were taking on Claims 8 and 17, until the responsive briefs in our patent owner response. It wasn't because they were completely silent on this issue in the petition. So why is that not sufficient, even if we took that as the right characterization? Well, it's not sufficient because the claim structure they brought up, the non-order of operation, that wasn't really brought up. It was the way they were construing the claim was brought up. But that construction that the board actually landed on that was non-order of operation was brought up for the very first time in oral argument. And we think under Dell and Qualcomm, that's just inappropriate. Thank you, Your Honor. Thank you.